IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DAVID GEORGE CHANDLER,                          CV. 06-1777-PK

               Petitioner,                          FINDINGS AND
                                                RECOMMENDATION

v.

SHARON BLACKETTER,

               Respondent.
_____

PAPAK, Magistrate Judge:


**INTRODUCTION**

      Petitioner brings this habeas corpus action pursuant to 28 U.S.C. § 2254 in which he

challenges his underlying state convictions for Rape in the Second Degree, Sodomy in the

Second Degree, Furnishing Alcohol to a Person under 21 Years of Age, and Endangering the

Welfare of a Minor.  For the reasons set forth below, the Petition for Writ of Habeas Corpus (#1)

and Alternative Request for Evidentiary Hearing (#21) should be denied, and judgment should


Page 1 - FINDINGS AND RECOMMENDATION

be entered dismissing this action with prejudice.

## STATEMENT OF FACTS

On October 10, 2001, a Clackamas County grand jury indicted petitioner on one count of Rape in the Second Degree, two counts of Sodomy in the Second Degree, one count of Furnishing Alcohol to a Person under 21 Years of Age, and one count of Endangering the Welfare of a Minor.  R.E. 108 at ER 1-3.[1]  Petitioner pleaded not guilty.  The court first appointed Mr. Slininger to represent the petitioner, but petitioner then retained Mr. Shepley as counsel.  R.E. 103 at 4.  On May 7, 2002,  however, the court granted Mr. Shepley's motion to withdraw as counsel.  R.E. 102 at 2.

The district attorney then filed a new information including allegations of solicitation to commit perjury and solicitation to commit tampering with a witness.  R.E. 102 at 5.  On May 9, 2002, the court appointed a private attorney, Mr. Haines, for the limited purpose of representing the petitioner during arraignment on these new allegations.  *Id*. at 6.

The court next appointed Mr. Woram as petitioner's counsel.  R.E. 104 at 3.  After the petitioner sent a letter to the court requesting a new attorney, Mr. Woram attempted to visit the petitioner in jail, but the petitioner refused to see him.  *Id*.  On June 14, 2002, the court held a hearing on the petitioner's request for substitute counsel.  At the hearing the petitioner explained that Mr. Woram refused to do what the petitioner asked, lied to him and was "rude, arrogant, and condescending," and that the petitioner would no longer cooperate with Mr. Woram as counsel. *Id*.  The prosecutor, Ms. Landers, objected to Mr. Woram's withdrawal, asserting that the petitioner had been arraigned nine months earlier and that the victim was becoming less cooperative over time.  *Id*. at 4-5.  Ms. Landers explained that she had received a letter from the

---

[1] Citation to "R.E." refers to Respondent's Exhibit.

Page 2 - FINDINGS AND RECOMMENDATION

petitioner in which he stated that he did not trust attorneys and was capable of speaking for himself. *Id*. at 5. Ms. Landers asserted petitioner's letter made "it perfectly clear that he will drag this on in any way that he can." *Id*. at 5. The court declined to appoint new counsel, voicing concern that the petitioner would "do the very same thing with that lawyer." *Id*. at 7. Instead, the court offered the petitioner the options of waiving the right to counsel and retaining Mr. Woram as a legal advisor, or keeping Mr. Woram. *Id*. The petitioner elected to continue with Mr. Woram as his attorney. *Id*.

Less than two weeks after the hearing on petitioner's request for new counsel, Mr. Woram moved the court to withdraw because he believed that he could not ethically continue as the petitioner's attorney. R.E. 105 at 5. Ms. Landers objected, arguing that this was "yet another attempt by the defendant to manipulate the criminal justice system by continuing to delay this case." *Id*. at 4. Ms. Landers further asserted that the petitioner's previously discussed letter to her "intentionally threatened that if he didn't get a plea offer that he liked that he would drag this case out indefinitely and knew how to do it." *Id*. The court permitted Mr. Woram to withdraw and appointed Mr. Watson as counsel. *Id*. at 5.

Approximately one month after his appointment as counsel, Mr. Watson, like Mr. Shepley and Mr. Woram before him, moved to withdraw. R.E. 106 at 6. The petitioner told the court that "the feeling is mutual." *Id*. at 7. The court warned the petitioner that "this is the end of the line with regard to changing attorneys." *Id*. The court clarified that "if you're not able to get along with your next lawyer, you're going to be in here trying this case by yourself." *Id*. at 8. The petitioner said that he understood the court's decision. *Id*. The court later reiterated that this would be the petitioner's "last opportunity to change attorneys" and that if the petitioner was "not

able to agree with his new attorney" he would be proceed to trial without an attorney. *Id*. at 10. The court set a new trial date of November 5, 2002.

Subsequently, a judge temporarily covering for the assigned judge appointed Mr. Bernstein to represent the petitioner. The temporary judge granted Mr. Bernstein's request for a continuance and set December 17, 2002 as the trial date. R.E. 106 at 19. On November 22, 2002, however, Mr. Bernstein moved to withdraw as counsel based on a letter that the petitioner sent to the temporary judge concerning a motion in his case as well as a conversation between the petitioner and Mr. Bernstein. *Id*. at 108. At the hearing on the motion, the petitioner explained that Mr. Bernstein did an incompetent job at a hearing, that he then criticized Mr. Bernstein for a poor performance, and that Mr. Bernstein reacted by quitting. *Id*. at 109. The petitioner explained that he had not asked Mr. Bernstein to quit, that he merely criticized Mr. Bernstein, and that he had no intention of "this happening." *Id*. at 110-11. When the court indicated it would deny Mr. Bernstein's motion to withdraw, Mr. Bernstein stated that he would not and could not continue to represent the petitioner, regardless of whether the court appointed another attorney. *Id*. at 111. The court delayed its decision and took Mr. Bernstein's motion to withdraw under advisement. *Id*.

The court resumed the hearing on Mr. Bernstein's motion to withdraw three days later. R.E. 106 at 114. Before the hearing, the court met with another attorney, Ms. Cooke, about her availability to represent the petitioner. *Id*. Ms. Cooke was apparently unavailable to act as the petitioner's attorney for the December 17, 2002 trial date. *Id*. at 131. Also before the hearing, Mr. Bernstein presented the court with a copy of a new letter that he had received from the petitioner. The letter contained obscene language and insulted Mr. Bernstein's ethnicity,

Page 4 - FINDINGS AND RECOMMENDATION

criticized Mr. Bernstein's reputation, and encouraged Mr. Bernstein to find another career.[2]  *Id.* at 119.

The court allowed Mr. Bernstein to withdraw.  R.E. 106 at 115.  After reviewing petitioner's history with his previous attorneys, the court stated that "having read that letter, I decided it was fruitless to try and appoint another attorney to represent you."  *Id.* at 119.  The court, however, indicated that it would try to get an attorney to act as a legal advisor for the petitioner.  *Id.*  The petitioner resisted the court's decision, explaining that he was perfectly happy to work with Mr. Bernstein and that he did not intend for Mr. Bernstein to withdraw.  *Id.* at 121, 124.  The petitioner also said that he wrote the letter to Mr. Bernstein when he was very upset, just after receiving notification that Mr. Bernstein was moving to withdraw as his attorney.  *Id.* at 120-21,124.

The petitioner then reviewed his relationships with his previous attorneys.  He explained that his conflict with Mr. Shepley stemmed from his desire to take the stand contrary to Mr. Shepley's advice.  R.E. 106 at 121.  Petitioner also explained that he sought to replace Mr. Woram because Mr. Woram refused to set a bail reduction hearing, refused to answer several of his questions, and acted as if his case " was an entire burden."  *Id.* at 122.  Petitioner next explained that Mr. Watson did not look petitioner in the eye or introduce himself and threw his business card at the petitioner.  *Id.*  Finally, the petitioner requested that the court appoint Ms. Cooke and stated that he would "bend over backwards to do anything it took to make sure that this does not happen again."  *Id.* at 122-23.  The petitioner asserted that he was "in no way

---

[2] The letter read: "Fuck you, you cock-sucking kike dump truck.  You mother-fucking court-appointed public pretenders refuse to do the job you're assigned to do and then bail out when you're criticized for not doing it competently.  Do the world a favor and find another career.  Eat shit and die," two double lines, and then the words, "'stick this in my file."

competent" to represent himself and would be convicted if forced to represent himself at trial. *Id*. at 123. The prosecutor meanwhile contended that the petitioner's request for new counsel and a continuance was merely a part of petitioner's acknowledged plan to delay the case. *Id*. at 126.

The court observed that the case was 410 days old and that Oregon Supreme Court guidelines indicate that such felonies should be tried within 90 days. R.E. 106 at 126. The court also noted petitioner's threat to the prosecutor to delay the case indefinitely. *Id*. at 132. The court then denied petitioner's motion to continue, but agreed to search for a legal advisor for the petitioner. *Id*.

Nearly two weeks later, the court offered to appoint Mr. Dunn as a legal advisor for the petitioner if the petitioner agreed to move the trial date to December 12, 2002. R.E. 106 at 134. The petitioner refused to permit the court to reschedule the trial date and stated, "[a]s far as I'm concerned, I'm not representing myself so I don't need a legal advisor." *Id*. at 136. The petitioner refused to speak to Mr. Dunn and said that the court was trying to bait him into accepting a legal advisor. *Id*. at 137.

On December 17, 2002, the day of trial, Ms. Cooke appeared on the petitioner's behalf to move for appointment of counsel. R.E. 106 at 141. Ms. Cooke argued that nothing in the record suggested that the petitioner failed to cooperate with Mr. Shepley. *Id*. Ms. Cooke also argued that nothing suggested that the petitioner was at fault in causing Mr. Woram to withdraw. *Id*. at 141-42. Ms. Cooke further contended that there was nothing in Mr. Watson's motion to withdraw permitting an interference that the petitioner was at fault. Ms. Cooke also noted that the petitioner's letter to Mr. Bernstein was privileged, and that Mr. Bernstein's decision to give the letter to the judge was self-serving and a violation of Mr. Bernstein's ethical obligations. *Id*.

Page 6 - FINDINGS AND RECOMMENDATION

at 144.  In conclusion, Ms. Cooke asserted that the petitioner was entitled to court-appointed

counsel under the State of Oregon and the United States Constitutions. *Id*. at 147-48.

The court refused to appoint counsel.  The court noted that the petitioner had a

"calculated purpose in delaying this [case] indefinitely."  R.E. 106 at 148.  The court also stated

that Oregon state case law suggested that the right to counsel does not require a court to

repeatedly give a defendant an additional court-appointed attorney.  *Id*.  Further, the court

emphasized that the petitioner understood that the attorney appointed after Mr. Watson would be

his last court-appointed attorney.  *Id*.

During trial, the petitioner stated that he was incapable of making an opening statement

and that he wished to be represented by counsel.  R.E. 106 at 170.  The court instructed the jury,

however, that the petitioner had waived his right to court-appointed counsel.  *Id*.  The petitioner

was convicted of all counts.  *Id*. at 310-11. The petitioner then appeared without counsel at

sentencing, and the court sentenced him to three consecutive terms of 75 months each, for a total

of 225 months.  R.E. 101, R.E. 106 at 322.

Petitioner appealed his conviction, assigning error to the trial court's refusal to grant

defendant's request for continuance; refusal to appoint counsel for the trial; and failure to appoint

counsel for sentencing.  R.E. 108 at 15, 21.  The Oregon Court of Appeal affirmed without

opinion and the Oregon Supreme Court denied a petition for review.  *State v. Chandler*, 205 Or.

App. 568 (2006); *State v. Chandler*, 341 Or. 245 (2006).  On December 12, 2006, petitioner filed

his petition for writ of habeas corpus (#1) in this Court.

## LEGAL STANDARDS

A habeas petitioner is not entitled to relief in federal court unless he demonstrates that the

state court's adjudication of his claim:

Page 7 - FINDINGS AND RECOMMENDATION

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Section 2254(d)(1) establishes a two-part test to determine whether a habeas petitioner is entitled to relief. *Sarausad v. Porter*, 479 F.3d 671, 676 (9th Cir. 2007). First, the petitioner must show that there is clearly established Supreme Court precedent. *Id.* (*citing Williams v. Taylor*, 529 U.S. 362, 381 (2000)). Second, the petitioner must show that the state court decision was either "contrary to" or an "unreasonable application" of that precedent. *Id.* (*citing Early v. Packer,* 537 U.S. 3, 8 (2002) (per curiam)). A state court's findings of fact are presumed correct and the petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Thus, federal courts apply a "highly deferential standard for evaluating state-court rulings." *Sarausad*, 479 F.3d at 676 (internal citations omitted).

The federal court reviews the last reasoned decision by the state court. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991); *Franklin v. Johnson*, 290 F.3d 1223, 1233 n. 3 (9th Cir. 2002). The decisions of the state trial court that occurred between May 2, 2002, and March 3, 2003 are the bases for review in the instant proceeding, since the Oregon Court of Appeal affirmed without opinion and the Oregon Supreme Court denied a petition for review.

## I.    Clearly Established Federal Law

"Clearly established" as used in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision."

Page 8 - FINDINGS AND RECOMMENDATION

*Lockyer v. Andrade,* 538 U.S. 63, 71 (2003) (*citing Williams,* 529 at 412).  In other words, "'clearly established Federal law' is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lambert v. Blodgett*, 393 F.3d 943, 974 (9th Cir. 2004) (*citing Lockyer,* 538 U.S. at 72).

Although other federal court decisions do not themselves constitute "clearly established Federal law," they may assist in determining what law is "clearly established," or clarify whether a state court's decision is contrary to, or an unreasonable application of, existing Supreme Court precedent.  *See, e.g., Robinson v. Ignacio*, 360 F.3d 1044, 1057 (9th Cir. 2004) ("when faced with a novel situation we may turn to our own precedent, as well as the decisions of other federal courts, in order to determine whether the state decision violates the general principles enunciated by the Supreme Court and is thus contrary to clearly established federal law");  *Lewis v. Mayle*, 391 F.3d 989, 995 (9th Cir. 2004) ("we still look to our own law for its persuasive authority in applying Supreme Court law" ) (internal quotations omitted); *Luna v. Cambra*, 306 F.3d 954, 960 (9th Cir. 2002), *amended,* 311 F.3d 928 (9th Cir. 2002).

## II.      Contrary To Federal Law

The terms "contrary to" and "unreasonable application" have independent meanings. *Sarausad v. Porter*, 479 F.3d 671, 676 (9th Cir. 2007).  A state court decision is "contrary to" clearly established federal law if it is "in conflict with", "opposite to" or "diametrically different from" Supreme Court precedent.  *Williams*, 529 U.S. at 388.  A state-court decision may be contrary to Supreme Court precedent in two ways: (1) if the state court "arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law"; or (2) "decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts."

*Sarausad*, 479 F.3d at 676 (*citing Williams*, 529 U.S. at 413).  The Ninth Circuit has clarified

the first prong of this "contrary to" test, stating that a decision may be contrary to clearly

established federal law if it "fails to apply the correct controlling authority." *Clark v. Murphy*,

331 F.3d 1062, 1067 (9th Cir. 2003) (*citing Williams*, 529 U.S. at 413-14).  By contrast, "a

run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to

the facts of a prisoner's case" in a distinguishable factual context is not "contrary to" clearly

established Supreme Court precedent.  *Williams*, 529 U.S. at 406 (O'Conner, J., concurring).

**III.    Unreasonable Application of Federal Law**

An "unreasonable application" of clearly established Supreme Court law occurs when

"the state court identifies the correct governing legal principle . . . but unreasonably applies that

principle to the facts of the . . . case." *Lambert v. Blodgett*, 393 F.3d 943, 974 (9th Cir. 2004)

(*citing Williams*, 529 U.S. at 413). "[A] federal habeas court making an 'unreasonable

application' inquiry should ask whether the state court's application of federal law was

objectively unreasonable."  *Sarausad*, 479 F.3d at 676-77 (*citing Williams,* 529 U.S. at  409).

State court decisions are objectively unreasonable when they improperly interpret or

apply the relevant legal rule.  *See Williams*, 529 U.S. at 397 (decision unreasonable if state court

mischaracterized the legal rule, failed to evaluate the totality of available evidence, or relied on

an inapplicable exception).  On the other hand, the Supreme Court has declined to find objective

unreasonableness by state courts in various situations.  *See, e.g., Rice v. Collins*, 546 U.S. 333,

341-342 (2006) (when reasonable minds considering the record might disagree on court's

credibility determination); *Yarborough v. Alvarado*, 541 U.S. 652, 665 (2004) (when the state

court's test application of law "fits within the matrix" of prior Supreme Court decision); *Lockyer*

*v. Andrade*, 538 U.S. 63, 72 (2003) (state court's affirmance of petitioner's sentence reasonable

when Supreme Court precedents on sentencing proportionality lack clarity and grant legislatures

broad discretion to fashion sentences); *Penry v. Johnson*, 532 U.S. 782, 795 (2001) (when

Supreme Court holding establishing the rule was limited to the "distinct circumstances"

presented there).

## DISCUSSION

The *Sixth Amendment* provides that "in all criminal prosecutions, the accused shall enjoy

the right . . . to have the Assistance of Counsel for his defence." *U.S. Const. amend VI*.  "The

plain wording of this [Sixth Amendment] guarantee thus encompasses counsel's assistance

whenever necessary to assure a meaningful 'defence.'" *United States v. Wade*, 388 U.S. 218, 225

(1967). Thus, the right to counsel attaches at all critical stages in the criminal justice process.

*See, e.g., Maine v. Moulton*, 474 U.S. 159, 170 (1985).  Critical stages of the criminal process

include both trial and sentencing.  *See Gardner v. Florida*, 430 U.S. 349, 358 (1997).  The

Supreme Court holds that the right to counsel is "fundamental,"  *Gideon v. Wainwright,* 372 U.S.

335 (1963), and does not depend on a request by the defendant.  *Carnley v. Cochran*, 369 U.S.

506, 513 (1962) ("where the assistance of counsel is a constitutional requisite, the right to be

furnished counsel does not depend on a request").

The state court's decision in this case implicates three separate doctrines related to a

defendant's Sixth Amendment right to the assistance of counsel: waiver of the right to counsel,

forfeiture of the right to counsel, and requests for continuances to secure counsel.

## I.      Waiver of the Right to Counsel

### A.      Supreme Court Precedent at the Time of the Relevant State Court Decision

A person accused of crime may choose to forgo representation by waiving the right to counsel. *Faretta v. California*, 422 U.S. 806 (1975). A waiver is an "intentional relinquishment or abandonment of a known right or privilege." *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938). The Supreme Court holds that "'courts indulge every reasonable presumption against waiver' of fundamental constitutional rights and . . . 'do not presume acquiescence in the loss of fundamental rights.'" *Johnson,* 304 U.S. at 464. Thus, the Constitution requires that a waiver of the right to counsel be knowing and intelligent. *See id.*

In *Faretta*, the Supreme Court held that a defendant's waiver of counsel is valid whenever the defendant is "made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with his eyes open.'" *Faretta*, 422 U.S. at 835 (*quoting Adams v. United States ex rel. McCann*, 317 U.S. 269, 279 (1942)). These "dangers and disadvantages of self-representation" include the fact that "counsel is required to help even the most gifted layman adhere to the rules of procedure and evidence, comprehend the subtleties of voir dire, examine and cross-examine witnesses effectively . . . , object to improper prosecution questions, and much more." *Patterson v. Illinois*, 487 U.S. 285, 299, n.13 (1988).

 In *Iowa v. Tovar,* 541 U.S. 77 (2004), the Supreme Court clarified the types of warnings required before a valid waiver*,* holding that in the context of a guilty plea, a defendant constitutionally waives the right to counsel when the trial court informs him of the charges against him, his right to be counseled regarding his plea, and the range of allowable punishments attendant upon the entry of that plea. *Id.* at 81. Note, however, that the last reasoned decision of the state court in this case occurred before the Supreme Court's ruling in *Tovar*. Thus, this Court acknowledges the differences between *Faretta* and *Tovar*, yet necessarily analyzes the state

court's decision only against contemporaneous Supreme Court precedent from *Faretta*.

**B.      Federal Circuit Courts' Interpretation of Supreme Court Precedent**

The Ninth Circuit holds that in order for a defendant to make a valid *Faretta* waiver of the right to counsel, "the district court must insure that the defendant understands 1) the nature of the charges against him, 2) the possible penalties, and 3) the 'dangers and disadvantages of self-representation.'"[3] *United States v. Erskine*, 355 F.3d 1161, 1167 (9th Cir. 2003)  (*citing United States v. Balough*, 820 F.2d 1485, 1487 (9th Cir. 1987)).  The preferred procedure requires the trial court to discuss each of these three elements with the defendant in open court. *Balough*, 820 F.2d at 1488.  This procedure, however, is not mandated.  *See Lopez v. Thompson*,

---

[3]Despite this concise exposition of the Ninth Circuit's waiver standard in *Erskine*, Ninth Circuit jurisprudence does not uniformly describe the requirements for a valid *Faretta* waiver. On one hand, *Balough* and its progeny establish that trial courts must inform defendants of three elements (charges, penalties, and "dangers and disadvantages") to ensure valid waivers of the right to counsel.  *See Balough*, 820 F.2d at 1487; *Erskine*, 355 F.3d at 1167.  On the other hand, two Ninth Circuit cases specifically addressing waivers of the right to counsel through conduct discuss only the third *Balough* element of "dangers and disadvantages" of representation.  *See United States v. Kelm,* 827 F.2d 1319, 1332 (9th Cir. 1987) (finding a valid waiver when the record showed that the defendant was aware of the "dangers and disadvantages" of self-representation); *United States v. Meeks*, 987 F.2d 575, 579 (9th Cir. 1993) (distinguished itself from *Kelm* and noting that the defendant did not waive his right to counsel in part because the record did not show that the defendant was "aware of the dangers of proceeding pro se").

Additionally, not all circuits agree with the Ninth Circuit in requiring the trial court to inform a defendant of the charges, penalties, and risks of self-representation before finding a valid *Faretta* waiver.  *See, e.g., United States v. Evans*, 478 F.3d 1332, 1340 (11th Cir. 2007) (right to counsel at sentencing validly waived where court adequately warned defendant of dangers of self-representation); *Moore v. United States*, 178 F.3d 994, 998 (8th Cir. 1999) (extensive colloquy explaining dangers and disadvantages of self-representation deemed sufficient for knowing and intelligent waiver of the right to counsel); *United States v. Schmidt,* 105 F.3d 82, 87 (2d Cir. 1996) (waiver of right to counsel is knowing and intelligent when the court points out the disadvantages of proceeding without counsel, and the defendant has the ability to understand the nature of the proceedings against her); *but see United States v. Frechette*, 456 F.3d 1, 12-14 (1st Cir. 2006) (waiver upon guilty plea deemed knowing and intelligent where court informed accused of nature of charges, of his right to counsel, and of the range of punishments attendant upon entry of the plea).

Page 13 - FINDINGS AND RECOMMENDATION

202 F.3d 1110, 1117 (9th Cir. 2000) ("consistent with our authority, we have suggested, but not

mandated, a preferred procedure for federal district courts to follow").

"In rare instances, however, 'absent such a colloquy, a knowing and intelligent waiver

will [nonetheless] be found.'" *Savage v. Estelle*, 924 F.2d 1459, 1466 (9th Cir. 1990) (*quoting*

*United States v. Rylander*, 714 F.2d 996, 1005 (9th Cir. 1983)); see *Balough*, 820 F.2d at 1488

("We have also held that a limited exception may exist whereby a district court's failure to

discuss each of the elements in open court will not necessitate automatic reversal when the

record as a whole reveals a knowing and intelligent waiver.").  In those instances, the court's

inquiry into whether a defendant validly waived the right to counsel focuses on what the

defendant understood,  rather than on what the court said or understood.  *See Balough*, 820 F.2d

at 1487-88.

Similarly, the Ninth Circuit recognizes that a waiver of the right to counsel may still be

valid despite defective instructions from the trial court concerning the risks of self-

representation.  *See Cordova v. Baca*, 346 F.3d 924, 926-27 (9th Cir. 2003) ("[b]ecause the

Supreme Court has not spoken to the consequences of a trial court's failure to give proper

*Faretta* warnings, a state court would be entitled to conclude that a defective waiver colloquy

does not automatically result in a defective waiver--that a defendant's waiver was nonetheless

knowing and voluntary, perhaps because defendant was well versed in the criminal justice

process"); *Monterrosa v. Belleque*, No. 05-1233-MO, 2008 U.S. Dist. LEXIS 2172 , at *19 (D.

Or. Jan. 8, 2008) (citing *Cordova*, 346 F.3d at 926-27 and holding that a post-conviction relief

court did not unreasonably apply Supreme Court precedent when determining that a defendant

was well-aware of the risks of self-representation even though the state court's colloquy failed to

specifically warn the defendant of those risks); *accord Swiger v. Brown*, 86 Fed. Appx. 877, 881

Page 14 - FINDINGS AND RECOMMENDATION

(6th Cir. 2004) ("*Faretta* does not clearly establish that formal warnings by the trial court are required to establish a knowing, voluntary and intelligent waiver of the right to counsel").

Ninth Circuit cases applying the general principles articulated by the Supreme Court in *Faretta* also illustrate that defendants may choose to waive the right to counsel merely by manipulating the attorney appointment process, so long as they are also aware of the risks of self-representation. *See United States v. Sutcliffe*, 505 F.3d 944, 955-956 (9th Cir. 2007) (defendant's manipulation of his relationships with five successive appointed lawyers through threats, lawsuit, refusal to cooperate, rudeness and hostility constituted a waiver of the right to counsel, when defendant was forewarned that he risked waiving his right to counsel and informed of dangers of self-representation, his charges, and potential penalties); *United States v. Kelm,* 827 F.2d 1319, 1331-32 (9th Cir. 1987) (defendant's continual refusal to retain or accept appointed counsel or expressly waive his right to counsel constituted a waiver of the right to counsel because defendant "understood the dangers and disadvantages of self-representation" and "elected to defend himself with his 'eyes open.'") (*citing Faretta*, 422 U.S. at 835); *cf. United States v. Meeks*, 987 F.2d 575, 577-79 (9th Cir. 1993) (defendant's "continual changing of attorneys" did not constitute a waiver of the right to counsel because the court controlled whether defendant had court-appointed counsel and defendant, who was mentally ill, was not aware of the dangers of self-representation).

Decisions by the Fifth, Seventh, and Tenth Circuits also characterize a defendant's manipulation of attorney hiring and appointment processes as a knowing and intelligent waiver of the right to counsel. *See, e.g.*, *United States v. Bauer*, 956 F.2d 693, 695 (7th Cir.1992) (defendant's ability to pay for counsel combined with his refusal to do so constitutes a waiver by conduct of the right to counsel); *McQueen v. Blackburn*, 755 F.2d 1174, 1178 (5th Cir. 1985)

Page 15 - FINDINGS AND RECOMMENDATION

(defendant's request on third day of trial that counsel be removed, after being warned that no replacement counsel would be appointed, was the functional equivalent of a knowing and intelligent waiver of counsel); *United States v. Mitchell*, 777 F.2d 248, 257-58 (5th Cir.1985) (defendant's knowing retainer of attorney with scheduling conflict and failure to hire a replacement within a reasonable time constitutes waiver of the right to counsel); *Richardson v. Lucas*, 741 F.2d 753, 757 (5th Cir. 1984) (defendant's refusal to proceed with appointed counsel, absent good cause and after being warned that no other counsel would be appointed, was a voluntary waiver of right to counsel); *United States v. Moore*, 706 F.2d 538, 540 (5th Cir. 1983) (defendant's persistent, unreasonable demand for dismissal of counsel and appointment of new counsel was the functional equivalent of a knowing and voluntary waiver of counsel); *United States v. Weninger*, 624 F.2d 163, 167 (10th Cir. 1980) (defendant's stubborn failure to hire an attorney constituted a waiver of the right to counsel).

### C. State Court Decision Not Contrary To Established Precedent

As the cases discussed above demonstrate, there is no clearly established Supreme Court precedent prohibiting a defendant from waiving the right to counsel by conduct. Notably, *Faretta* concerned a defendant who "clearly and unequivocally declared to the trial judge that he wanted to represent himself and did not want counsel." *Faretta*, 422 U.S. at 835. *Faretta* simply did not address whether a defendant's conduct, as opposed to a defendant's verbal request, may constitute a choice to waive the right to counsel. Because there exists no Supreme Court precedent regarding waiver of counsel by conduct alone, the state court's decision here that petitioner waived his right to counsel by failing to cooperate with his attorneys cannot be contrary to clearly established Supreme Court precedent. *See* 28 U.S.C. §2254(d)(1).

Moreover, the state court's decision here even conforms to the Supreme Court's precedent

concerning explicit waivers of the right to counsel, at least to the extent that court does not apply

a rule "opposite to" or "diametrically different from" that standard.  *See Williams*, 529 U.S. at

388.   The Supreme Court precedent dictates that in order to validly waive the right to counsel a

defendant need only know the dangers of self-representation and subsequently elect to proceed

without an attorney.  *See Faretta*, 422 U.S. at 835.   At a minimum, the record indicates that the

state court warned petitioner that he would waive his right to counsel if he could not cooperate

with Mr. Bernstein, that the court believed that petitioner knew the risks of self-representation,

and that the court interpreted petitioner's offensive letter to Mr. Bernstein as evidence of

petitioner's election to proceed without counsel.[4]  Thus, because the trial court's state trial court

neither arrived at a conclusion of law opposite to the Supreme Court nor decided a case

differently than the Supreme Court on a set of materially indistinguishable facts, the court did

not act "contrary to . . . clearly established Federal law as determined by the Supreme Court of

the United States."  28 U.S.C. §2254(d)(1); *see Sarausad*, 479 F.3d at 676 (*citing Williams*, 529

U.S. at 413).

### D.    State Court Decision Not Unreasonable Application of Established Precedent

The circuit court cases discussed above also illustrate that trial courts do not

unreasonably apply Supreme Court precedent by deciding that defendants validly waive their

right to counsel when they: (1) understand the dangers of self-representation; and (2) manipulate

the attorney appointment process.   Here, the record shows that the petitioner satisfied both of

---

[4] Although the trial court never explicitly stated the rule it applied, a state court's failure
to articulate the source of the relevant legal rule does not necessarily render it's decision
"contrary to" Supreme Court precedent.  *See Mitchell v. Esparza*, 540 U.S. 12, 16 (2003) (per
curiam) (a state court's decision is not contrary to clearly established federal law simply because
the court did not cite or demonstrate awareness of Supreme Court opinions so long as neither the
reasoning nor the result of the state-court decision contradicts them).

these elements, even though the state court never specifically instructed the petitioner about the dangers of self-representation. Thus, the state court's decision to interpret the petitioner's conduct as a waiver of the right to counsel does not constitute an "unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States." 28 U.S.C. §2254(d)(1).

First, the record in this case reflects that the petitioner already understood the dangers of self-representation even without specific instruction from the court. In the same hearing when the court permitted Mr. Bernstein to withdraw, the petitioner stated that he was "in no way competent" to represent himself, reflecting that he grasped the complexity of self-representation. R.E. 106 at 123. Additionally, the petitioner demonstrated his understanding of the importance of counsel when he stated that the court "railroaded [him] into a conviction," by denying his request for replacement counsel and a continuance. R.E. 106 at 132. Finally, the court's comment that the petitioner "seem[ed] to communicate very well," indicated that the petitioner had the intellectual capacity to understand the risks of proceeding pro se. R.E. 104 at 6.

Moreover, "in a collateral attack on an uncounseled conviction, it is the defendant's burden to prove that he did not competently and intelligently waive his right to the assistance of counsel." *Iowa v. Tovar*, 541 U.S. 77, 92 (2004). The petitioner's unsupported assertions that he was unaware of the dangers of self-representation do not satisfy this burden. Therefore, the trial court did not unreasonably apply the Supreme Court precedent establishing awareness of the risks of self-representation as a precondition for a valid waiver of the right to counsel.[5]

---

[5] There is an argument that the state court's decision unreasonably applied Ninth Circuit law requiring that a defendant be aware of "1) the nature of the charges against him, 2) the possible penalties, and 3) the 'dangers and disadvantages of self-representation'" before waiving the right to counsel. *United States v. Erskine*, 355 F.3d 1161, 1167 (9th Cir. 2003) (*citing*

Page 18 - FINDINGS AND RECOMMENDATION

Second, the record also demonstrates that the petitioner attempted to manipulate the attorney appointment process by sabotaging his relationship with his last option for counsel, yet verbally insisted that he had not waived his right to counsel.  Initially, the trial court warned the petitioner several times that the court would not appoint another attorney if the petitioner could not agree with Mr. Bernstein.  R.E. 106 at 7, 8, 10.  Subsequently, the petitioner sent two letters, one to a judge apparently criticizing Mr. Bernstein's performance, and the other to Mr. Bernstein crudely insulting Mr. Bernstein's ethnicity, profession, and competence.  R.E. 106 at 108, 119.  The petitioner declared, after the fact, that he had not intended for Mr. Bernstein to withdraw, yet petitioner's letter exhorting Mr. Bernstein to "do the world a favor and find another career" sent the opposite message.  *See* R.E. 106 at 119, 124.  Even though the trial court ultimately acceded to Mr. Bernstein's request to withdraw, it is a reasonable interpretation of the record that the petitioner, not the court, elected to terminate his relationship with Mr. Bernstein.[6]  Consequently,

---

*United States v. Balough*, 820 F.2d 1485, 1487 (9th Cir. 1987)).  Even if the state court's decision conflicted with these Ninth Circuit requirements, this Court cannot grant petitioner habeas relief.  A petitioner is entitled to habeas relief if the state court unreasonably applies "clearly established Federal law as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d).  Because the Supreme Court has never clearly established precedent concerning what warnings are required before a waiver by conduct of the right to counsel, the state court could not have unreasonably apply that precedent here.  Further, the Ninth Circuit's rules concerning pre-waiver warnings are extensions of the requirements established by *Faretta* specifically for explicit waivers of the right to counsel.  Thus, these Ninth Circuit requirements do not necessarily clarify principles of Supreme Court law concerning waiver of the right to counsel by conduct, the situation in this case.

[6] Mr. Bernstein potentially shares some responsibility for prematurely ending his representation of the petitioner.  For example, Mr. Bernstein stated that he refused to continue representing the petitioner, regardless of whether the trial judge permitted him to withdraw.  R.E. 106 at 111.  Further, counsel appearing on behalf of the petitioner suggested that Mr. Bernstein brought the petitioner's privileged letter to the court's attention for self-serving purposes, apparently to hasten the end of their working relationship.  *Id.* at 144.  It is unnecessary for this analysis under 28 U.S.C. § 2254(d)(1), however, to evaluate whether Mr. Bernstein was responsible for forcing the trial judge to let him withdraw.  Rather, it is sufficient that the record

Page 19 - FINDINGS AND RECOMMENDATION

the trial court's decision to construe the petitioner's conduct as a choice to waive the right to counsel was not an unreasonable application of Supreme Court precedent.

## II.      Forfeiture of the Right to Counsel

Unlike a waiver, which requires "an intentional relinquishment or abandonment of a known right or privilege," *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938), a forfeiture "results in the loss of a right regardless of the defendant's knowledge thereof and irrespective of whether the defendant intended to relinquish that right." *United States v. Goldberg*, 67 F.3d 1092, 1101 (3rd Cir. 1995) (discussing the meanings of the terms "waiver," "forfeiture," and "waiver by conduct" and noting the frequent confusion of these terms by a number of courts).

### A.      Supreme Court Precedent at the Time of the Relevant State Court Decision

Although the Supreme Court has never addressed a case involving the forfeiture of a defendant's right to counsel, the Court has decided two cases involving the forfeiture of the related Sixth Amendment right to be present at one's own trial. *See Illinois v. Allen*, 397 U.S. 337, 343 (1970) ("a defendant can lose his right to be present at trial if, after he has been warned by the judge that he will be removed if he continues his disruptive behavior, he nevertheless insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom"); *Taylor v. United States*, 414 U.S. 17, 19-20  (1973) (defendant "effectively waived" the right to be present at trial by voluntary absence, despite that defendant did not know and never was warned that the trial would continue in his absence).

Further, the Supreme Court grants trial courts particular deference in managing defiant

reflects that the trial judge reasonably applied the waiver standard by interpreting petitioner's own conduct (independent of Mr. Bernstein's reaction) as a choice to waive the right to counsel.

defendants. In discussing a defendant's forfeiture of his constitutional right to be present at trial, the Supreme Court noted that "trial judges confronted with disruptive, contumacious, stubbornly defiant defendants must be given sufficient discretion to meet the circumstances of each case." *Illinois v. Allen*, 397 U.S. 337, 343 (1970).

### B.    Federal Court's Interpretation of Supreme Court Precedent

In habeas corpus actions, the lower federal courts generally agree that *Taylor* and *Allen* do not generate clearly established Supreme Court precedent specifically concerning the forfeiture of the right to counsel. *See Wilkerson v. Klem*, 412 F.3d 449, 454 (3d Cir. 2005) ("there is no Supreme Court precedent dealing with the forfeiture of counsel"); *Fischetti v. Johnson,* 384 F.3d 140, 150 (3d Cir. 2004) ("the [Supreme] Court's established precedent in this area has not expressly dealt with the matter of forfeiture of counsel"); *Barrett v. Meeks,* No. CIV S-97-1106 LKK JFM P, 2006 U.S. Dist. LEXIS 82935 at *48 (E.D. Cal. Nov. 14, 2006), adopted by, *Barrett v. Meeks*, No. CIV S-97-1106 LKK JFM P, 2007 U.S. Dist. LEXIS 21846 (E.D. Cal. Mar. 27, 2007) ("[t]he United States Supreme Court, however, has not specifically addressed whether a criminal defendant may forfeit or 'waive by conduct' the right to counsel"); *cf. Gilchrist v. O'Keefe,* 260 F.3d 87, 97 (2d Cir. 2001), cert. denied, *Gilchrist v. Smith*, 535 U.S. 1064 (2002) (*Taylor* and *Allen* clearly establish only the general proposition that "a defendant may be found to have forfeited certain trial-related constitutional rights based on certain types of misconduct," without specifically addressing the right to counsel). Therefore, this Court adopts the analysis that *Taylor* and *Allen* do not create precedent on the forfeiture of the right to counsel.

### C.    State Court Decision Not Contrary To Established Precedent

The record here indicates that the trial court potentially applied a forfeiture standard in

Page 21 - FINDINGS AND RECOMMENDATION

denying petitioner's motions to appoint counsel.  The court's statement, "having read that [offensive] letter, I decided it was fruitless to try and appoint another attorney to represent you," suggests forfeiture.  R.E. 106 at 119.   By identifying the offensive letter itself as an act of misconduct that justified its decision, the court apparently reasoned that the petitioner forfeited his right to representation, irrespective of his actual wishes.  Further, in a hearing immediately before the beginning of the petitioner's trial, the state court indicated that two Oregon state cases, *Spry* and *Brenner*, suggested that the right to counsel does not require a judge to repeatedly give a defendant an additional court-appointed attorney. R.E. 106 at 148.  These cases endorse forfeiture by noting that defendants may lose their right to counsel absent a waiver.  *See State v. Spry*, 166 Ore. App. 26, 29 (Or. Ct. App. 2000) ("'This is not a case, however, where the defendant has waived his rights.'") (*quoting State v. Lingren*, 79 Ore. App. 324, 327, 719 (Or. Ct. App. 1986)); *State v. Brenner*, 151 Ore. App. 159, 167 (Or. Ct. App. 1997) ("[D]efendant's argument that he did not validly waive his right to counsel misses the point.")

Even if the state court applied a forfeiture standard, the state court did not act contrary to clearly established Supreme Court precedent governing the forfeiture of the right to counsel because no such precedent exists.  *See Fischetti v. Johnson,* 384 F.3d 140, 150 (3d Cir. 2004) (state court ruling not contrary to clearly established Federal law because the Supreme Court has not "expressly dealt with the matter of forfeiture of counsel"); *Barrett v. Meeks,* 2006 U.S. Dist. LEXIS 82935 at *48-49 (E.D. Cal. Nov.14, 2006), adopted by, *Barrett v. Meeks*, 2007 U.S. Dist. LEXIS 21846 (E.D. Cal. Mar. 27, 2007) (state court decision cannot be contrary to federal law as determined by Supreme Court precedent because the Supreme Court has not specifically addressed whether a criminal defendant may forfeit or waive by conduct the right to counsel).

**D.    State Court Decision Not Unreasonable Application of Established Precedent**

Circuit courts recognize that defendants who verbally abuse, threaten, or physically attack an attorney may forfeit their right to counsel. *See United States v. McLeod*, 53 F.3d 322, 325-26 (11th Cir. 1995) (relying on *Illinois v. Allen*, 397 U.S. 337 (1970) and holding that a defendant forfeited his right to counsel when he verbally abused and threatened to harm his attorney during a telephone call, threatened to sue his attorney four times, and urged his attorney to engage in unethical conduct); *United States v. Leggett*, 162 F.3d 237, 250 (3d Cir. 1998) ("an attack qualifies as the sort of 'extremely serious misconduct' that amounts to the forfeiture of the right to counsel").

Moreover, in habeas corpus cases, state courts do not unreasonably apply Supreme Court precedent when deciding that defendants forfeit their right to counsel by failing to secure or accept counsel, or by physically assaulting their attorney. *See Wilkerson v. Klem*, 412 F.3d 449, 455-56 (3rd Cir. 2005) (state court's decision that defendant forfeited right to counsel by failing to retain an attorney by trial date was not an unreasonable application of Supreme Court precedent); *Fischetti v. Johnson*, 384 F.3d 140, 152 (3rd Cir. 2004) (state court's decision that defendant forfeited right to counsel by refusing to continue with current court-appointed counsel or represent himself was not an unreasonable application of Supreme Court precedent*); Gilchrist v. O'Keefe,* 260 F.3d 87, 97 (2nd Cir. 2001), cert. denied, *Gilchrist v. Smith*, 535 U.S. 1064 (2002) ("given the Supreme Court's recognition that other important constitutional rights may be forfeited based on serious misconduct, we cannot say that the state courts were unreasonable in determining that the right to counsel can be forfeited based on petitioner's physical assault on his attorney").

Here, the petitioner neither physically assaulted his attorney nor explicitly refused court-appointed counsel as in other cases where courts found clear forfeitures of the right to counsel.

Page 23 - FINDINGS AND RECOMMENDATION

Nevertheless, the petitioner's letter contained profanity, ethnic slurs, and other offensive language directed specifically toward Mr. Bernstein. R.E. 106 at 119. The court found this conduct sufficiently abusive to terminate petitioner's right to counsel. *Id.* Even if the state court erroneously interpreted the petitioner's letter as a forfeiture of the right to counsel, the court's decision was not "objectively unreasonable."

**III.    Request for Continuance**

**A.    Supreme Court Precedent at the Time of the Relevant State Court Decision**

The Supreme Court has also clearly established the related but separate principle that a trial court may deny a defendant's request for continuance to expedite judicial process when the defendant fails to secure counsel, even when that denial results in the defendant's being unrepresented at trial. *See Ungar v. Sarafite*, 376 U.S. 575, 589 (1964). In *Ungar*, a trial witness was charged with contempt of court for refusing to answer questions. *Id.* at 576-80. When the witness appeared at the contempt hearing with a lawyer who was not available immediately to represent him, the judge refused to adjourn the hearing because the witness had sufficient time to hire an attorney who would be available to proceed immediately. *Id.* at 590. The witness was later convicted. *Id.* at 576. The witness appealed, the New York Court of Appeals affirmed his conviction, and the witness challenged that decision. *Id.* The Supreme Court affirmed, holding that the judge's decision not to grant an adjournment did not deny the witness due process. *Id.* at 590. The Court reasoned that "[t]he five days' notice given petitioner was not a constitutionally inadequate time [for the petitioner] to hire counsel and prepare a defense." *Id.* The Court also declared that the "the motion for continuance was not made until the day of the scheduled hearing" and that "[the petitioner] himself was a lawyer familiar with the court's practice of not granting adjournments." *Id.* Consequently, the Supreme Court's

Page 24 - FINDINGS AND RECOMMENDATION

clearly established precedent in *Ungar* grants the trial court discretion to deny continuances of unrepresented defendants when the defendant's own conduct causes the undesirable delay. *See Id.* at 589-90.

### B.    Federal Courts' Interpretation of Supreme Court Precedent

Ninth Circuit cases analyzing this same issue reinforce the holding of *Ungar* regarding the trial court's discretion to deny continuances that force defendants to appear without counsel. In *United States v. Leavitt*, 608 F.2d 1290 (9th Cir. 1979), the petitioner waited four months after being warned of the need to obtain counsel before contacting the public defender. *Id.* at 1293. Three days later, at the trial date, the trial court allowed the petitioner's public defender to withdraw because the attorney was not adequately prepared. *Id.* at 1293. The trial court, however, denied the petitioner's request for a continuance, forcing the petitioner to proceed through the government's presentation of evidence without counsel. *Id.* at 1293. At the end of the prosecution case, the judge continued the trial to allow the petitioner to prepare his case with the public defender, who had reentered his case as counsel. *Id.* at 1293. The petitioner did not call any witnesses or recall any government witnesses, and was convicted. *Id.* The petitioner appealed, and the Ninth Circuit affirmed the petitioner's conviction. *Id.* at 1294. The court held that "in some circumstances a court may constitutionally deny a continuance even when that denial results in the defendant's being unrepresented at trial . . . when the defendant engages in a course of conduct which is dilatory and hinders the efficient administration of justice." *Id.* at 1293 (*citing Ungar*, 376 U.S. at 589).

Similarly, in *Kelm*, the trial court denied petitioner's request for appointed counsel and a continuance after the petitioner continually refused to retain or accept appointed counsel or expressly waive his right to counsel in an attempt to delay trial. *United States v. Kelm,* 827 F.2d

Page 25 - FINDINGS AND RECOMMENDATION

1319, 1321 (9th Cir. 1987). The Ninth Circuit affirmed, holding that the district court's decision not to grant further continuances was "fair and reasonable." *Id.* The court noted that trial was continued three previous times for the petitioner to find suitable counsel, and that the petitioner's requirements that prospective counsel complete a detailed questionnaire and be experienced tax trial lawyers "deterred and hindered counsel selection." *Id.* Thus, the Ninth Circuit's decisions in *Leavitt* and *Kelm* support the proposition that clearly established Supreme Court precedent permits trial courts to deny continuances when the defendant's own conduct in failing to secure counsel threatens to delay trial.

### C.    State Court Decision Not Contrary To Established Precedent

The state court's decision to deny the petitioner's motion for a continuance on the day of trial was not contrary to clearly established Supreme Court precedent. The Supreme Court has established that there is no mechanical tests for deciding when a denial of a continuance is improper. *Ungar*, 376 U.S at 589. Rather, "[t]he answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied." *Id.* Here, the trial court explicitly based its decision to deny petitioner's continuance on several relevant case-specific factors. The trial court noted the unavailability of potential replacement counsel (Ms. Cooke), the postponement of trial well beyond the limit set by the Oregon Supreme Court's timeliness guidelines, and the petitioner's repeated threats to delay the case indefinitely. R.E. 106 at 132. Thus, the trial court's decision was consistent with the Supreme Court's clearly established precedent in *Ungar* governing a trial court's discretion to deny continuances.

### D.    State Court Decision Not Unreasonable Application of Established Precedent

The trial court's decision to deny petitioner's request for a continuance also was not an

Page 26 - FINDINGS AND RECOMMENDATION

unreasonable application of Supreme Court precedent governing the denial of continuances. *See Ungar v. Sarafite*, 376 U.S. 575, 589 (1964). The Ninth Circuit has interpreted *Ungar* to hold that trial judges can deny continuances resulting in defendants proceeding to trial unrepresented if the defendant's own dilatory course of conduct in failing to secure counsel hinders the efficient administration of justice. *See Kelm*, 827 F.2d at 1322; *Leavitt*, 608 F.2d at 1293. Here, as in *Leavitt* and *Kelm*, petitioner exhibited a dilatory course of conduct that delayed the onset of trial. For example, the state court determined that "a fair reading of the file here, and certainly the last encounter I had with [the petitioner] . . . suggests that [the petitioner] has a calculated purpose in delaying this indefinitely." R.E. 106 at 148.

The petitioner's conduct was even more dilatory than that of the defendants in *Leavitt* and *Kelm*. Instead of merely failing to seek counsel, as in *Leavitt*, or refusing to accept counsel, as in *Kelm*, the petitioner retained one attorney and accepted four other court-appointed attorneys, but gradually undermined his relationships with each of these attorneys until they withdrew. This dilatory conduct secured petitioner six new trial dates and delayed trial approximately 320 days beyond the trial deadline set by the Oregon Supreme Court for such cases. R.E. 106 at 126. By contrast, the Ninth Circuit upheld the trial court's denial of a continuance in *Kelm* when the defendant had received just three previous continuances and delayed trial only three months. *See Kelm*, 827 F.3d at 1320-21. Similarly, the Ninth Circuit upheld the trial court's denial of a continuance in *Leavitt* when the defendant had received only one previous continuance that delayed trial less than two weeks. *See Leavitt*, 608 F.2d at 1293. Since petitioner's conduct was at least as dilatory as that of defendants in *Kelm* and *Leavitt* where the Ninth Circuit upheld denial of continuances, the trial court's decision to deny petitioner's day-of-trial request for a continuance was a reasonable application of clearly established Supreme Court precedent as

Page 27 - FINDINGS AND RECOMMENDATION

interpreted by the Ninth Circuit.[7]

## IV.    Failure to Inquire Into Counsel's Motion to Withdraw

Petitioner also briefly argues that the trial court improperly granted Mr. Bernstein's

motion to withdraw because it did not conduct an inquiry into the basis for that motion.  In

relation to a defendant's motion for new counsel, the Sixth Amendment requires "on the record

an appropriate inquiry into the grounds for such a motion, and that the matter be resolved on the

merits before the case goes forward."  *Schell v. Witek*, 218 F.3d 1017, 1025 (9th Cir. 2000)

(*citing Smith v. Lockhart*, 923 F.2d 1314, 1320 (8th Cir. 1991)).  Here, the petitioner suggests

that the rule articulated in *Schell* in the context of a defendant's motion for new counsel should

also apply to an attorney's motion to withdraw.  Even if the court were to extend that principle

here, the record shows that the state trial court performed such an inquiry into the grounds for

Mr. Bernstein's motion by: (1) examining the offensive letter that the petitioner sent to Mr.

Bernstein; (2) hearing from the petitioner and Mr. Bernstein; and (3) reviewing the petitioner's

history with previous attorneys, including the court's warning that Mr. Bernstein would be the

petitioner's last court-appointed attorney.  R.E. 106 at 114-26.  Thus, the state court did not act

contrary to or unreasonably apply established Supreme Court precedent governing inquiry into

motions for new counsel.

## V.    Alternative Request for Evidentiary Hearing

---

[7]The petitioner does not explicitly argue that the trial court acted contrary to, or
unreasonably applied Federal law in denying him a continuance to obtain counsel before
sentencing.  Such an argument might succeed in the habeas context, given that, as petitioner
noted in his direct appeal, the "imminent trial date could have no longer been a concern to the
trial court . . . ."  R.E. 108 at 22.  Unfortunately, neither party's exhibits include a transcript of
petitioner's sentencing, and thus it is impossible for this Court to analyze whether the petitioner
is entitled to habeas relief based on the trial court's failure to grant a continuance for sentencing.

Page 28 - FINDINGS AND RECOMMENDATION

The petitioner alternatively requests an evidentiary hearing.   Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a district court presented with a request for an evidentiary hearing must:

> "determine whether a factual basis exists in the record to support the petitioner's claim. If it does not, and an evidentiary hearing might be appropriate, the court's first task in determining whether to grant an evidentiary hearing is to ascertain whether the petitioner has 'failed to develop the factual basis of a claim in State court.' If so, the court must deny a hearing unless the applicant establishes one of the two narrow exceptions set forth in section 2254(e)(2)(A) & (B). If, on the other hand, the applicant has not 'failed to develop' the facts in state court, the district court may proceed to consider whether a hearing is appropriate, or required under [*Townsend v. Sain*, 372 U.S. 293, 9 L. Ed. 2d 770, 83 S. Ct. 745 (1963)]."

*Insyxiengmay v. Morgan*, 403 F.3d 657, 669-670 (9th Cir. 2005) (*quoting Baja v. Ducharme*, 187 F.3d 1075, 1078 (9th Cir. 1999)).  Under *Townsend*, a defendant is entitled to an evidentiary hearing if he can show that:

> "(1) the merits of the factual dispute were not resolved in the state hearing; (2) the state factual determination is not fairly supported by the record as a whole; (3) the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing; (4) there is a substantial allegation of newly discovered evidence; (5) the material facts were not adequately developed at the state-court hearing; or (6) for any reason it appears that the state trier of fact did not afford the habeas applicant a full and fair hearing."

*Earp v. Ornoski*, 431 F.3d 1158, 1167 (9th Cir. 2005) (*quoting Townsend*, 372 U.S. at 313), cert. denied, *Ornoski v. Earp*, 547 U.S. 1159 (2006).

A federal district court also retains a degree of discretion in determining whether to hold an evidentiary hearing.  *Lonchar v. Thomas*, 517 U.S. 314, 326 (1996) (*citing* Habeas Corpus Rule 8(a); *Townsend*, 372 U.S. at 318; *Keeney v. Tamayo-Reyes*, 504 U.S. 1, 11-12, (1992)).  In particular, "where an applicant for a writ of habeas corpus alleges facts which, if proved, would entitle him to relief, the federal court to which the application is made has the power to receive

Page 29 - FINDINGS AND RECOMMENDATION

evidence and try the facts anew." *Townsend*, 372 U.S. at 312 (1963).

Here, petitioner does not demonstrate the he is entitled to an evidentiary hearing. Petitioner has not failed to develop the factual basis of a habeas claim in state court. *See Insyxiengmay*, 403 F.3d at 669-670. Further, the petitioner does not demonstrate that any of the six situations described in *Townsend* apply. *See Earp*, 431 F.3d at 1167. Nor does the petitioner allege any facts which, if proved, could entitle him to habeas relief.[8]  *See Townsend*, 372 U.S. at 312. Thus, the Court should not grant petitioner's request for an evidentiary hearing.

## RECOMMENDATION

For the reasons set forth above, the Petition for Writ of Habeas Corpus (#1) and Alternative Request for Evidentiary Hearing (#21) should be DENIED, and judgment should be entered DISMISSING this case with prejudice.

## SCHEDULING ORDER

Objections to these Findings and Recommendation, if any, are due September 2, 2008. If no objections are filed, then the Findings and Recommendation will be referred to a Unites States District Judge for review and go under advisement on that date. If objections are filed, any response to the objections will be due fourteen days after the date the objections are filed and review of the Findings and Recommendation will go under advisement on that date.

---

[8] Petitioner's assertion that he was unaware of the risks of self-representation might arguably be such a fact which, if proved, could entitle him to habeas relief. Even in the unlikely event that petitioner proved that fact in an evidentiary hearing, the record still shows that the state trial court could have reasonably concluded from petitioner's words and conduct that the petitioner knew of the dangers of self-representation. Thus, the highly deferential habeas standard would not entitle the petitioner to relief merely because the trial court was mistaken about petitioner's level of awareness. *See Williams*, 529 U.S. at 410 (the "unreasonable application" test requires that the state court decision be more than just incorrect or erroneous).

Page 30 - FINDINGS AND RECOMMENDATION

DATED this 18th day of August, 2008.


                          /s/ Paul Papak_____
                          Honorable Paul Papak
                          United States Magistrate Judge